**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

       vs.                                       **1:07-CR-226-1 & 13**
                                                        **(GLS)**

**CHARLES VASCONCELLOS and**
**BRYAN WILSON,**

                         **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE UNITED STATES:**

Hon. Glenn T. Suddaby            JAMES C. WOODS
United States Attorney             Assistant U.S. Attorney
445 Broadway                          DANIEL HANLON
218 James T. Foley U.S. Courthouse   Special Assistant U.S. Attorney
Albany, New York 12207-2924

**FOR CHARLES VASCONCELLOS:**

Tobin, Dempf Law Firm            KEVIN A. LUIBRAND, ESQ.
33 Elk Street
Albany, New York 12207

**FOR BRYAN WILSON:**

Office of Andrew M. Purrott        ANDREW M. PURROTT, ESQ.
317 Montgomery Street
Syracuse, New York 13202

**Gary L. Sharpe**
**District Court Judge**

**Decision and Order**

I. **Introduction**

Charles Vasconcellos and Bryan Wilson have been indicted for conspiring to distribute at least five kilograms of cocaine and fifty grams of crack. *See Indictment, Dkt. No. 1*; *see also* 21 U.S.C. §§ 841(b)(1)(A), 846. At their arraignment, the government moved to detain them as risks of danger and flight. *See 5/29/07 Min. Entry*; *see also* 18 U.S.C. § 3141 *et. seq.* After a bail hearing, Magistrate Judge Randolph H. Treece denied the motion, and issued release orders. *See 5/30/07 "Vasconcellos Release Order", Dkt. No. 20*; *5/31/07 "Wilson Release Order", Dkt. No. 47*. The government now moves to revoke those orders. *See* 18 U.S.C. § 3145(a)(1); *see also Dkt. Nos. 55, 109, 123, 150*. Vasconcellos and Wilson oppose, and Vasconcellos cross-moves to reduce the bond amount recited in release condition 7(b). *See* 18 U.S.C. 3145(a)(2); *VASCONCELLOS Release Order, ¶ 7(b); see also Dkt. Nos. 106, 120, 156*. After receipt of the motions, the court conducted a de novo bail hearing.

For the reasons that follow, the court: grants the government's motion, revokes the Wilson Release Order, and detains him as a risk of flight and danger; denies the government's motion to revoke Vasconcellos'

Release Order; and denies VASCONCELLOS' cross-motion to modify condition 7(b).

## II. Legal Discussion

### A. Standard of Review

In this district, magistrate judges make the initial bail decision. *See* 18 U.S.C. §§ 3041, 3141(a), 3156(a)(1); *see also* L. R. CR. P. 58.1(a)(2)(I) & (b). If dissatisfied with that decision, either the government or the defendant may seek district court review. See 18 U.S.C. § 3145(a)(b). Nothing in the statute itself, however, defines the scope of that review. *See* 18 U.S.C. § 3145.

The Circuit has said that the district court "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *U.S. v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). This language is a generic reference to de novo review, a standard district courts routinely employ when reviewing a magistrate's dispositive recommendation. *See e.g.*, FED. R. CIV. P. 72(b) ("The district judge ... shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition ..."); 28 U.S.C. § 636(b)(1)(C) (same). Other judges in this district have conducted de novo review of bail decisions. *See*

3

*U.S. v. Maley*, No. 5:07-MJ-194, 2007 WL 2667469, *2 (N.D.N.Y. Sept. 6, 2007) (Scullin, SJ); *U.S. v. Aref*, No. 04-CR-402, 2006 WL 1650660, *1 (N.D.N.Y. Jun. 8, 2006) (McAvoy, SJ); *U.S. v. Gilkeson*, 431 F. Supp. 2d 270, 295 (N.D.N.Y. 2006) (Hurd, DJ); *U.S. v. Kaminski*, No. 97-CR-382, 1998 WL 275594, * 10 (N.D.N.Y. May 27, 1998) (Pooler, then DJ, now CJ). This court has defined the scope of de novo review as follows:

> De novo review requires that the court "'give fresh consideration to those issues to which specific objections have been made.' It will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions." *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (citing H.R. Rep. No. 94-1609, 94th Cong., 1st Sess. p. 3 (1976), U.S. Code Cong. & Admin. News 1976, p. 6163); *see also* 12 Charles Alan Wright *et. al.*, *Federal Practice and Procedure* § 3070.2 (2d ed. 1997). 28 U.S.C. § 636(b)(1) actually employs the phrase "*de* novo determination" rather than "*de novo* hearing," thus permitting "whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations." *Grassia v.* Scully, 892 F.2d 16, 19 (2d Cir. 1989) (citing *Raddatz*, 447 U.S. at 676). When the district court makes its *de novo* determination, the parties have no right to present evidence not submitted to the Magistrate Judge. Nonetheless, the court retains the discretion to consider additional evidence although it should afford the parties notice. *See Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994); *Pan American World Airways, Inc. v. International Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir. 1990)).

*Almonte v. N.Y.S. Div. of Parole*, No. Civ. 9:04CV484, 2006 WL 149049, *5

(N.D.N.Y. Jan. 18, 2006).

Accordingly, while the court will give fresh consideration to a bail decision and make an independent judgment, the question remains as to what record it will consider when doing so.[1]  First of all, the court will enforce proposed Rule 58.1(a)(3) of the Local Rules of Criminal Procedure.[2]  Additionally, the moving party must specifically identify that portion of the magistrate judge's decision for which review is sought.  If exhibits were introduced at the hearing but not preserved in the record, they should be attached to the motion or response.  Absent a finding of

---

[1] Obviously, the bail statute and judicial precedent provide the basis for independent legal review.

[2] The rule provides as follows:

    A party seeking review of a magistrate judge's release or detention order pursuant to 18 U.S.C. § 3145 shall file the following documents in support of its motion:
        a. Notice of motion
        b. Memorandum of law
        c. Attorney affidavit
        d. Written transcript of all proceedings relating to the defendant's release or detention.
    Upon filing of any such motion, the opposing party shall file its papers in opposition to said motion within ten (10) days of the filing date of said motion.
    No reply is permitted.
    The Court shall promptly determine the motion based upon the submitted papers without oral argument.

Rule 58.1(a)(3) has survived public comment, and has been approved by the Circuit.  It will take effect on January 1, 2008.

Parties should realize that bail hearings are usually recorded electronically, and preserved on disk.  Therefore, they will have to order a written transcript from a transcription service.

good cause supported by an explanation set forth in the motion or response, the court will not consider new evidence or arguments not presented to the magistrate judge. If there is new evidence or argument, the parties should seek reconsideration by the magistrate judge before seeking district court review. The parties need not re-file relevant items that have been docketed, and the court will retrieve items subject to its control.[3] If the court elects to expand the record and permit oral argument or new evidence, it will notify the parties.

### B. The Bail Principles

Both Vasconcellos and Wilson have been indicted for conspiring to distribute more than five kilograms of powder cocaine and fifty grams of crack cocaine. *See Indictment, Dkt. No. 1*; 21 U.S.C. §§ 841(b)(1)(A), 846; *see also Pinkerton v. U.S.*, 328 U.S. 640 (1946) (conspiratorial liability). If convicted, each faces a maximum life sentence and a mandatory minimum ten years. Accordingly, the government moved to detain them as risks of flight and danger pursuant to 18 U.S.C. § 3142(f)(1)(c)(drug offense penalized by a sentence exceeding ten years).

---

[3] Thus, there is no need to submit a complaint, indictment or written detention decision already filed with the court. *See* 18 U.S.C. § 3142(i)(1)(detention order shall include written findings of fact and statement of detention reasons). So too, the court recognizes that a Pretrial Services Report ("PSR") must be returned to the Department of Probation after a bail hearing. *See* 18 U.S.C. § 3153(c)(1). Accordingly, the court will obtain the PSR from Probation.

A defendant's release is governed by the Bail Reform Act.  *See* 18 U.S.C. §§ 3141 *et. seq.*; F<small>ED</small>. R. C<small>RIM</small>. P. 46(a).  In general, the court must release a defendant on personal recognizance, unsecured bond, or specified conditions, whichever is the least restrictive necessary to assure the defendant's appearance and the safety of others and the community. *See* 18 U.S.C. § 3142(a)(1-2)(b)(c).  The court may detain, but only under restricted circumstances and after a hearing following carefully delineated procedures.  *See* 18 U.S.C. § 3142(a)(4)(e)(f).

The rules governing the hearing and the ultimate detention decision are well-established.  Evidence may be introduced by proffer since normal evidentiary rules do not apply.  *See* 18 U.S.C. § 3142(f); *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citing *U.S. v. Salerno*, 481 U.S. 739, 743 (1987)).  Under certain circumstances, including drug charges penalized by a sentence of ten years or more, the statute creates a rebuttable presumption that there is no condition or combination of conditions that will preclude flight and dangerousness.  *See* 18 U.S.C. § 3142(e)(f)(1)(A-D). Despite that presumption, the government retains the burden of proof, by clear and convincing evidence as to dangerousness, and by a preponderance of evidence as to flight.  *See* 18 U.S.C. § 3142(f); *Ferranti*,

7

66 F.3d at 542; *U.S. v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985). Clear and convincing evidence is more than a preponderance, but means something less than "beyond a reasonable doubt," instead requiring "that the evidence support such a conclusion with a high degree of certainty." *Chimurenga*, 760 F.22d at 405 (quoting *Addington v. Tex.*, 441 U.S. 418, 431 (1979)).

If the defendant presents rebuttal evidence, the presumption does not dissipate, but continues to be weighed along with other factors. *U.S. v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991). Recited in the statute, those other factors include: the nature and circumstances of the charged offense; the weight of the evidence; the nature and characteristics of the defendant; the nature and seriousness of the risk to the community; and the risk of flight. *See* 18 U.S.C. § 3142(g); *U.S. v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).

Further elaboration regarding the operation of the presumption is necessitated because of an argument raised during the de novo hearing; namely, the presumption mandates detention absent rebuttal evidence by the defendant.[4] While the government correctly states the controlling law,

---

[4] The government also argued that Judge Treece failed to properly apply the presumption when making his decision. While the court disagrees that Judge Treece erred, any error is nonetheless moot since this court is conducting de novo review.

the court believes that it misunderstands its pragmatic application.

Clearly, "[i]n a presumption case ... a defendant bears a limited burden of production - not a burden of persuasion - to rebut the presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *U.S. v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citations omitted). However, the real issue is what evidentiary threshold the defendant must satisfy in order to meet his limited burden. In a flight presumption case, the Circuit found that the defendant had done so "by coming forward with information concerning his record of attendance in the state criminal proceeding, family ties and other matters." *U.S. v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986). Realistically, such "evidence" is actually or implicitly proffered by defense counsel on the basis of information gleaned from the Pretrial Services Report or charging instrument. In fact, the evidence proffered by Vasoncellos during the bail hearings before both Judge Treece and this court was substantially identical to that which satisfied the defendant's burden of production in *Martir*. *Cf. id.* and *Undocketed 5/30/07 Bail Hearing Transcript at pp. 13-15*. A judge has usually reviewed the Pretrial Services Report before the bail hearing. Accordingly, he is familiar with its factual content and the release conditions he might impose that could ameliorate the risks of flight

and danger. It would be absurd to conclude that a defendant fails to shoulder his burden of production unless he articulates that which the judge already knows. That is not to say that a defendant inherently meets his burden by standing mute. It is certainly risky for him to do so. However, the combination of facts and possible release conditions already known to the judge may be sufficient to support a *sua sponte* conclusion that the defendant has met his burden. Any requirement that attorneys regurgitate facts already known to the court would be a waste of valuable judicial resources. Naturally, the judge would then hold the government to its ultimate burden of proof, and detain or release, accordingly.

When considering the risk of flight, the court must determine: (1) whether the defendant is likely to flee the jurisdiction if released; and (2) whether any release conditions will reasonably guard against that propensity. *See 18 U.S.C. § 3142(e)*; *U.S. v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). Pertinent factors include: a severe sentence; an extensive criminal history; a lack of community ties; hidden assets; and the use of false names. *See U.S. v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987). Regarding drug crimes, the Circuit has favorably cited the Congressional finding that a flight risk is "particularly high among those charged with major drug offenses.... [and] ... that these offenders pose special risks of flight, ...

[such] ... that 'a strong probability arises' that no form of conditional release will be adequate to secure their appearance." *U.S. v. Martir*, 782 F.2d at 1144 (internal citations omitted).

As to dangerousness, the Bail Reform Act reflects Congressional concern about a group of dangerous defendants as to whom neither stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community. Thus, "[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *U.S. v. Colombo*, 777 F.2d 96, 98-99 (2d Cir. 1985). Simply prohibiting a defendant from "committing further crimes" is an insufficient condition of release to protect the public from dangerousness. *Id. at 100*; *see also*, *U.S. v. Ferranti*, 66 F.3d at 544. Furthermore, release in cases involving dangerousness risks injury to others while release in cases involving flight risks only a loss of a conviction. *U.S. v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993).

As to recidivism, the Supreme Court observed in *U.S. v. Salerno*, 481 U.S. at 742, "[r]esponding to the 'alarming problem of crimes committed by persons on release,' Congress formulated the Bail Reform Act of 1984 as the solution to a bail crisis in federal courts." (internal quotation marks

11

omitted). The Court upheld the Act's provisions permitting detention of those who are dangerous as long as procedural safeguards are met. *See id.* at 750. And again, elaborate conditions dependent upon good faith compliance are sometimes insufficient when a defendant's criminal history provides no basis for believing good faith will be forthcoming. *See U.S. v. Tortora*, 922 F.2d 880, 886-87 (1st Cir. 1990). Regarding a defendant's good faith, this court has stated:

> The quintessential factor is whether the defendant will do as the court directs. There are a variety of conditions that could reduce potential danger and flight if a defendant would abide by them. Examples include home confinement, electronic monitoring, curfews, pretrial services or family supervision, drug testing and treatment, and employment or educational mandates. However, none of these conditions will suffice to protect the community or minimize the flight risk if a defendant's past behavior amply demonstrates that he will not honor them. In other words, past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.

*U.S. v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, *12 (N.D.N.Y. Sept. 17, 2003).

## III. Bail Decision

As to both Wilson and Vasconcellos, the government based its detention motion on the Bail Reform Act's rebuttable presumption that no condition or combination of conditions exist that will ensure the defendants'

12

appearance or the safety of the community since they have been charged with a drug offense penalized by a sentence exceeding ten years. *See* 18 U.S.C. § 3142(e). Because both have been indicted, a grand jury has already found probable cause sufficient to trigger the presumption. *See U.S. v. Rodriquez*, 950 F.2d at 87(citing *U.S. v. Contreras*, 766 F.2d at 55). Furthermore, the indictment constitutes probable cause to believe that both defendants, consistent with principles of conspiratorial liability, are responsible for the distribution of at least five kilograms of powder cocaine and fifty grams of crack cocaine. Accordingly, if convicted, each defendant confronts a potential like sentence and a mandatory minimum ten years.

Regarding the drug charges and quantities, the evidence is strong because it is premised on court-authorized electronic surveillance, and items seized pursuant to search warrants executed when both men were arrested.

Ammunition and two loaded handguns were discovered on Wilson's premises during the search. While the evidence supporting his possession of the handguns is more circumstantial than the evidence supporting his possession of the ammunition, possession of ammunition by a convicted felon is a crime of violence. *See U.S. V. Carswell*, 144 F. Supp. 2d 123 (N.D.N.Y. 2001). Also, the Circuit "has long recognized the connection

13

between drug trafficking and firearms, repeatedly permitting firearms into evidence as proof of narcotics conspiracies 'because drug dealers commonly keep firearms on their premises as tools of the trade.'" *U.S. v. Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003) (quoting *U.S. v. Becerra*, 97 F.3d 669, 671-72 (2d Cir. 1996)).

So too, an unloaded AK-47 was seized from Vasconcellos' home. The inferential weight to be drawn from that fact, however, is qualitatively different than that from Wilson's possession of ammunition and loaded handguns. Naturally, the court is troubled by its finding during the de novo hearing that Vasconcellos is a drug dealer with an AK-47. Nonetheless, his possession of the weapon was not itself illegal, the weapon was unloaded, and the only evidence beyond the *Mitchell* inference is a conversation by others dealing with repercussions of a drug rip-off.

### A. **Wilson**

Twenty-five-years-old, Wilson is single, may have one child, and at the time of his arrest, resided with his mother and seven siblings. For twelve of the last thirteen years he has resided in Troy, New York. He is unemployed, his prior employment history is sporadic, and he has no assets. He is a daily marijuana abuser.

He has an extensive prior criminal record accompanied by repeated

14

failures to comply with conditions of supervision. In 1996, he was convicted of misdemeanor assault. In 2000, he was convicted of felonious possession of stolen property, and sentenced to thirty days time served, five years probation and restitution. Within two weeks of his release and while on probation, he was arrested for resisting arrest and other offenses, he then failed to appear in court as required, and a warrant was issued. Within nine months and still while on probation, he was again arrested for escape and resisting arrest, and after he failed to make a court appearance, a warrant was again issued for his arrest. On May 16, 2002, he was arrested, *inter alia*, for felonious drug possession and felonious possession of a loaded handgun. As a result, his 2000 probationary sentence was revoked, and he was re-sentenced to state prison for an indeterminate term of sixteen months to four years. He was released on parole in 2003, and after he violated his release conditions, his parole was revoked in 2004. He was re-paroled on September 19, 2005, and within four days of his release, he was arrested for criminal impersonation. In 2006, he plead guilty to the impersonation offense, he was sentenced to a conditional discharge by the Troy City Court, and within five months, the court issued an arrest warrant because he violated the court-ordered conditions.

Based on the court's de novo factual findings, the government has satisfied its burden of proving that Wilson is a risk of danger and flight. The court has weighed the statutory presumption and the other statutory factors, and it is convinced that he should be detained. Wilson is a recidivist offender who, if convicted, is confronting a mandatory minimum ten year sentence and the possibility of life. Given the severe sentence he is confronting and his lack of assets, he is a flight risk. Just as importantly, his current drug trafficking behavior, including that associated with the ammunition and handguns, has been dangerous. There are no release conditions that would preclude his risk of danger and flight. This is especially true since any conditions would be dependent upon his good faith compliance, and he has amply demonstrated by his current conduct and his criminal justice history that he places his own interests above those of society.

### B. **Vasconcellos**

Twenty-six-years-old, Vasconcellos is single, the unwed father of six children, and at the time of his arrest, had been residing in an apartment alone. For the last thirteen years he has resided in Troy, New York. He is unemployed, and reports no assets although $2,300 and scales were seized from his apartment at the time of his arrest. He is a daily marijuana

16

abuser.

Clearly, and as the court stated during the de novo hearing, the evidence suggests that he has supported himself through drug dealing. He has a 1998 misdemeanor weapons conviction, and the government offered no evidence describing the weapon. He has a 2003 misdemeanor conviction for falsifying business records. There is nothing in his criminal history indicative of his failure to abide by prior conditions of supervision.

Given the statutory presumption, Vasconcellos is a risk of flight and danger. He has offered evidence in contravention of those risks; namely, ties to the community and conditions of release that would ameliorate those risks. Thus, the court has weighed the presumption, and the following statutory bail factors: Vasconcellos' history, residence and family ties; his employment history and financial resources; his health; his prior criminal record; and the strength of the government's evidence. It has weighed the combination of those factors against conditions of release that might mitigate his risks of danger and flight, and concludes, as did Judge Treece, that release conditions can be set that would do so. *See Order Setting Conditions of Release, Dkt. No. 20.*

After de novo review, the court continues the conditions of release imposed by Judge Treece. *See id.* Those conditions include 7(b) requiring

17

that VASCONCELLOS post bond or an agreement to forfeit $150,000 cash or property.  *See id.*  Vasconcellos' cross-motion seeks modification of 7(b) to reduce the $150,000 to some less restrictive amount.  Vasconcellos has few, if any, of the kind of substantial community ties that would preclude flight.  He has no serious ties with the mother of any of his children nor with the children themselves.  He has no ties with a residence nor with an employer.  Rather, the evidence reasonably supports the conclusion that he is a drug dealer confronting a minimum mandatory ten year prison sentence.  Accordingly, he is a serious risk of flight, and the court declines to reduce the bail amount.

## IV. <u>Conclusion</u>

For the reasons discussed, the court denies the government's motion, and Vasconcellos' cross-motion to revoke or amend the Release Order of Magistrate Judge Treece.  *See Dkt. No. 20.*  The court grants the government's motion to revoke the Release Order of Bryan Wilson, *see Dkt. No. 47*, and orders his detention as a risk of danger and flight.

Accordingly, Wilson is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Wilson shall be

afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Wilson to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated:     November 5, 2007
           Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge